UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **STEVE GROSS CONCRETE CONSTRUCTION, INC.,** | ) ) | **CASE NO.  5:04 CV 01086** |
| Plaintiff, | ) ) | **JUDGE CHRISTOPHER A. BOYKO** |
| vs. | ) ) | |
| **CITY OF MACEDONIA, ET AL.,** | ) ) | **OPINION AND ORDER** |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants', City of Macedonia, City of Macedonia Building Department, Barbara Kornuc, Al Kalish and John Chasteen, Motion for Summary Judgment. For the reasons that follow, this Court grants the Defendant's motion as to the Plaintiff's federal claims and remands Plaintiff's state law claims to the Summit County Court of Common Pleas for adjudication..

**I.  FACTUAL BACKGROUND**

This action arises from the City of Macedonia's et al (collectively "Defendants") denial of Plaintiff's business registration permit. City of Macedonia ("City") Code ("Code") Ordinance 1361.05

1

requires that those wishing to engage in the business of building or contracting within the city must first obtain an annual permit or license, called a business registration, issued by the chief building inspector. Furthermore, all building projects are subject to mandatory inspections. Before issuing a permit or license the Code requires that the building inspector conduct an investigation into the applicant's business and, if the business is unsatisfactory, the City of Macedonia Building Department ("Building Department") sends a notice of disapproval with reasons to the mayor. The mayor then notifies the business that the city rejected its application. At the time of the actions giving rise to the claim defendant Al Kalish ("Kalish") was the chief building inspector, defendant John Chasteen ("Chasteen") was the head of the building department and defendant Barbara Kornuc ("Kornuc" or "Mayor") was the Mayor of Macedonia.

In the fall of 2000, Chasteen and Kalish first encountered Plaintiff Steve Gross Construction, Inc. ("Gross") as Gross was pouring a concrete driveway without first registering to do business in Macedonia. In April 2001, Gross again performed a concrete job without the requisite approval from Kalish. Moreover, Kalish forced Gross to redo the job because Gross failed to get an inspection and did not pour the concrete slabs thick enough to meet the code requirements. A dispute then arose about whether or not Kalish gave Gross approval to continue. Gross does not dispute that, in the past, Kalish never gave a verbal approval without also giving a green approval sticker. Gross never appealed Kalish's decision not to issue the green approval sticker.

On October 25, 2002, Gross again poured a concrete driveway without inspection or approval. This time Kalish did not require Gross to re-pour the driveway. Again, Gross alleges that Kalish gave a verbal okay for the job. Kalish did not give Gross a green approval sticker.

On or about December 8, 2002, Gross submitted a business registration application to the Building Department for the year 2003.  After consulting with Kalish and Kornuc and reviewing Gross' history of non-compliance, Chasteen recommended that the City reject the application.  Chasteen cited Gross' failure to register in 2000 and his failure to receive approval from Kalish for work in 2000, 2001 and 2002 as reasons for denial of the application.  (Chasteen Deposition at 10).  Contrary to City of Macedonia Code Section 1361.05 nobody in the City's employ ever sent Gross a letter containing the reasons for and explanation of the denial of his application.  Chasteen testified that he was supposed to send the letter but failed to do so.

Gross appealed the denial of its application.  Prior to the hearing, City officials realized that Chasteen did not send Gross a letter with the reasons for the denial of his application.  As a remedy for that mistake the City granted Gross' application on March 27, 2003, without a hearing.

Gross alleges that the denial of its application cost it business opportunities between January 1, 2003 and March 27, 2003.  Specifically, Gross claims that it lost out on five cement projects, a total of 10 days work, with Hudson Builders.  Hudson Builder's operator Laura DiNovi testified that Hudson would have awarded Gross the jobs if it were licensed.  Gross alleges that it incurred damages in excess of $48,000.00 because of missed opportunities.  It further seeks over $100,000.00 in punitive damages.

## II. LAW AND ANALYSIS

A.  **STANDARD OF REVIEW: SUMMARY JUDGMENT**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

3

material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial. *Id.* When no reasonable jury could return a verdict for the non-moving party, no genuine issue exists for trial. *Id.* In deciding on summary judgment the court must draw all inferences from the facts in the light most favorable to the non-moving party. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097-98 (6th Cir. 1994).

**B.     STANDARD OF REVIEW: LEGISLATIVE ACT**

When a Plaintiff alleges a constitutional violation based on a city's legislative act or regulation the Court must look to the reasonableness of that act. Courts do not require that a state or municipality prove the correctness of its acts. *Borman's, Inc. v. Michigan Property & Casualty Guaranty Association*, 925 F.2d 160, 162 (6th Cir. 1991). Rather, the complainant must convince the court that the legislature was unreasonable. *Id.* Section 1361.05 of the city Code provides in relevant part:

> (a) Upon receipt of an application, the original shall be referred to the chief building inspector, who shall cause such investigation of the applicant's business as he deems necessary for the protection of the public good.
>
> (b) If, as a result of the investigation, the applicant's business responsibility is found to be unsatisfactory, the inspector shall endorse on the application his disapproval and his reasons for the same, and return the application to the mayor, who may notify the applicant that his application is disapproved and that no permit and license will be issued.

Code § 1361.05

There are three tests of scrutiny which courts will employ when reviewing legislative decisions. The first, strict scrutiny, applies to laws that differentiate "suspect classes" such as race or national origin. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). To survive strict scrutiny a statute must be narrowly tailored to serve a compelling state interest. *Id.* The second, intermediate or heightened scrutiny, applies to statutes that differentiate on the basis of gender. *United States v. Virginia*, 518 U.S. 515, 555 (1996). A party seeking to uphold a government action based on gender must show that the classification serves an important governmental interest and is substantially related to achieving that interest. *Id.* at 524. Further, court's utilize intermediate scrutiny when reviewing acts that regulate commercial or content-neutral speech. *Capobianco v. Summers*, 377 F.3d 559, 564 (6th Cir. 2004). The last and most lenient form of scrutiny is the rational basis test. Because Gross is neither a member of a suspect class nor challenging a law based on gender classifications or speech regulation, the Court will apply the rational basis test.

Under the rational basis test, state or municipal action will survive scrutiny as long as it is rationally related to a legitimate governmental interest and it does not deprive the plaintiff of a constitutional or statutory right and does not shock the court's conscience. *Valot v. Southeastern Local Sch. Dist Bd. Of Ed.*, 107 F.3d 1220, 1228 (6th Cir. 1997). The requirement that contractors and subcontractors register and allow inspections prior to starting a project is certainly rationally related to the governmental interest of having safe buildings, a uniform building code and competent builders. Provisions of a building code that promote safe living conditions and a well-maintained community serve a legitimate governmental interest. *Brooks v. Sauceda*, 85 F. Supp 2d 1115, 1126 (D. Kan. 2000).

5

### III. DUE PROCESS

Gross asserts a violation of 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage ... subjects or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and laws, shall be liable to the person injured in an action at law, suit or equity, or other proceedings for redress...

42 U.S.C. § 1983

The Due Process Clause of the Fourteenth Amendment prohibits deprivation of life, liberty or property without due process of law. U.S. Const. Amend, XIV. When considering claims for violation of due process a court undertakes a two-step analysis. *Mitchell v. Frankhouser*, 375 F.3d 477, 480 (6th Cir. 2004). First, the court must determine if the plaintiff has a property interest entitled to due process protection. *Id.* Second, if the plaintiff has such an interest, the court must consider the form and the nature of the process that is due. *Id.* That is, to what process is plaintiff entitled before deprivation of his legitimate property right?

**A.     GROSS DOES NOT HAVE A PROTECTED PROPERTY INTEREST**

The main issue before this Court is whether Gross has a protected property interest in the business registration. For the reasons set forth below, the Court holds that Gross did not have a protected property interest. Thus, Gross' Due Process claims fail as a matter of law.

The Fourteenth Amendment does not create property interests; rather, they are created by other sources, such as state law. *Mclaurin v. Fischer*, 768 F.2d 98, 102 (6th Cir. 1985). "The existence of a property interest for due process purposes depends in large part on state law." *Whaley v. County of Tuscola*, 58 F.3d 1111, 1113-14 (6th Cir. 1995). Ohio courts recognize property

6

interests created by "mutually explicit understandings" or "unwritten common law practice in the workplace." *Yashon v. Gregory*, 737 F.2d 547, 553-54 (6th Cir. 1984).

The Fourteenth Amendment does not protect all property rights. A person or business must have a "legitimate claim of entitlement" to the property right. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). To demonstrate possession of a protected property interest a plaintiff must claim "more than abstract desires for or attractions to a benefit." *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002). Moreover, a unilateral expectation of a benefit is insufficient to create a protected property right. *Richardson v. Township of Brady*, 218 F.3d 508, 517 (6th Cir. 2000).

Gross may have established a protected property interest if it showed that the City or City officials engaged in words or conduct that created an implicit obligation to allow Gross to continue working in the City. *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 411 (6th Cir. 2002). The appellate court in *Med Corp.* affirmed the trial court's grant of summary judgment for the defendant city in a suit the plaintiff ambulance company brought because the city suspended the plaintiff from receiving 911 calls for one week. For the implicit obligation proposition, Gross may point to the verbal approval it alleges Kalish gave it on two occasions. Gross does not dispute, however, that Kalish never issued it a green approval sticker, a practice Kalish *always* followed when approving a job. Every builder in Macedonia, including Gross, knew of this practice. Therefore, even if Kalish gave Gross a verbal approval it would not create an implicit obligation on the City's part to approve Gross' application for business registration. Beyond the allegations of verbal approval, Gross cites nothing.

Significant to the case at bar, when a local government has discretion to confer a benefit, that benefit may not serve as a protected property interest for the purposes of due process. *Ferencz v.*

7

*Hairston*, 119 F.3d 1244, 1248 (6th Cir. 1997). Gross asserts that Section 1361.05 of the Code limits the decision-maker's discretion. Citing mostly Eighth Circuit precedent, Gross states that it may obtain a constitutionally protected property interest in a benefit when the municipality has limited or no discretion in granting it. The one Sixth Circuit case Gross cites, *Michigan Paytel Joint Venture v. City of Detroit*, states that a party may establish a constitutionally protected property interest by showing that the municipality had limited discretion in granting the benefit and that it abused that discretion. 287 F.3d 527, 539 (6th Cir. 2002). In *City of Detroit*, however, the appellate court upheld the district court's dismissal of the plaintiff telephone company's suit partly because the city decision-makers had broad discretion in awarding city contracts.

One Sixth Circuit case explained that, for example, a governmental entity had limited discretion in awarding a contract when state law mandated that government contracts go to the lowest bidder. *Peterson Enterprises, Inc. v. Ohio Department of Mental Retardation and Developmental Disabilities*, 1989 U.S. App. Lexis 17818 at *6 (6th Cir. Nov. 29, 1989). In *Peterson* the appellate court affirmed the dismissal of the bidder's § 1983 claim because the bidder did not have a protected property interest. There are no specified requirements in the Code other than satisfactory performance that, if met, would force the City to grant a permit to a builder. In fact, the Code does not outline any objective criteria that the building inspector, Kalish, must take into account when considering whether or not the applicant's business is satisfactory. By its own terms the Code grants an applicant the right to an investigation into its business conducted as the building inspector deems necessary. It is up to the chief building inspector to determine what constitutes an investigation. The investigation could merely include analysis of past experience with the applicant, such as the City's with Gross. The Code does

8

not grant applicants the right to a license.

The example the *Peterson* case gives for limited discretion is not present in the case at bar. Gross can point to no state or City law that prohibits Macedonia from rejecting its business application. If, after the investigation, the building inspector finds the business unsatisfactory he must endorse his disapproval of the application with reasons. Code § 1361.05(b). Gross asserts that, since the City cannot deny an application "for any reason", the City has no discretion. Admittedly, because the decision-makers must find that an applicant is unsatisfactory and give reasons therefor, the City does not have complete discretion. It is, however, wholly the job of the City decision-makers to determine what constitutes satisfactory past performance. Therefore, the Code does allow for broad discretion on the part of the City. Gross has not alleged, nor has it shown, that the City abused its discretion in denying the application. Because the City had discretion in issuing the building registrations, Gross does not have a constitutionally protected vested property right for the purposes of due process. *Ferencz*, 119 F.3d 1244 at 1248.

Next, Gross claims that the City's failure to follow its own procedures gives Gross a property right in the license. Sixth Circuit precedent, however, explicitly disagrees. "(T)he failure of a government body to follow a given procedure does not create a property right." *Charlie's Towing and Recovery v. Jefferson County*, 183 F.3d 524, 528 (6th Cir. 1999).

Lastly, Gross asserts that Chasteen admitted that the City had no reason to deny Gross' application and that the City violated Gross' due process. (Chasteen Deposition, 50-51). This is a misinterpretation of Chasteen's testimony. Chasteen merely testified to the fact that the City's in-house counsel advised him to grant the license as a remedy for the mistake of not sending Gross a letter with

9

reasons for the denial of his application. That Chasteen said there was "no reason not to" grant Gross a permit in the spring of 2003, *Id.*, does not mean that there was not a reason to deny it previously. Furthermore, Chasteen never once said or alluded that the City denied Gross its due process. The Court holds that Gross did not have a property interest in the registration. Therefore, Gross could not suffer a due process violation.

Because Gross does not have a protected property interest in the business license it cannot prevail on its specific substantive and procedural Due Process claims. Therefore, the Court grants Defendants' Motion for Summary Judgment as to Gross' Due Process claims.

### IV. EQUAL PROTECTION

Gross agrees in its Response Motion that it has not stated a claim for violation of equal protection under § 1983 and that summary judgment is proper with respect to this claim.

### V. GROSS FAILS TO STATE A § 1983 CLAIM AGAINST THE CITY

Courts cannot hold a municipality liable under 42 U.S.C. § 1983 for an employee's conduct on the basis of vicarious liability or respondeat superior. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978). In the instant action, Gross must prove the City itself is the wrongdoer. *Collins v. Parker Heights*, 503 U.S. 115, 122 (1992). That is, Gross must prove that an execution of an official City policy, or the tolerance of a custom, led to the injury. *Id.* At 122-123. Moreover, Gross must specify the policy or custom that led to the injury and then give facts supporting his claim; conclusory allegations are not sufficient. *Taylor v. Canton Police Dept.*, 544 F.Supp 783, 788 (N.D. Ohio 1982). Gross must also demonstrate that the City was the "moving force" behind the injury. *Bd. Of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

Therefore, Gross must show a direct causal link between the action and the deprivation of its rights. *Id.*

Gross failed to show any evidence that City policy or custom was the "moving force" behind the alleged violation of his constitutional rights. In its Response, Gross continuously cites actions of the government officials, but nowhere alleges that they are following set City policy. As such, Gross fails to state a claim under § 1983 against the City of Macedonia and the Court grants summary judgment for Defendants on this issue.

## VI. THE CITY OFFICIALS ARE ENTITLED TO QUALIFIED IMMUNITY

Government officials performing discretionary functions are generally shielded from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit developed a three-part test to determine whether or not a government official is entitled to qualified immunity: (1) Has a constitutional violation occurred; if so, (2) Was the right violated clearly established such that a reasonable person would have known of it and; (3) The plaintiff must show that the official's actions were objectively unreasonable. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(en banc).

In order to overcome a defendant's assertion of qualified immunity, a plaintiff must show that the defendant's conduct violated a clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "The unlawfulness of the official's action must be apparent. If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz*, 38 F.3d 264, 272 (6th Cir. 1994). Qualified immunity protects "all but the plainly incompetent or

11

those who knowingly violate the law." *Sova v. City of Mount Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998)(quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Gross' allegations cannot pass this test because it failed to prove step one, that the city deprived it of a constitutional right. Even if Gross had a protected property interest, Kalish and Kornuc would still benefit from immunity because they did not violate any of Gross' real or alleged rights. Chasteen is solely responsible for the alleged injury because he failed to send Gross the notification letter. Therefore, Chasteen might lose his immunity because he did not follow the Code. Gross, however, did not have a constitutionally protected property interest, so he cannot pass step one in the *Williams* qualified immunity test. The individually named defendants, Kalish, Kornuc and Chasteen are all entitled to qualified immunity for their actions in their capacity as city officials. The Court grants summary judgment for the Defendants on this claim.

## VII. GROSS CANNOT SUE THE BUILDING DEPARTMENT

The Building Department cannot be a party *sui juris*. It is merely a subunit of the City and is not an entity capable of suing or being sued. *Williams v. Dayton Police Department*, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987). The Defendants allege that, since Gross cannot sue the City, Gross cannot sue the Building Department. Gross did not address this issue in its Response to the Defendants Motion for Summary Judgment. Therefore, the Court grants the summary judgment for Defendants on this issue.

## VIII. DECISION

Gross presents no genuine issues of material fact. The City had more than limited discretion to deny Gross' application. Therefore, Gross did not have a protected property interest and its Due

12

Process claims fail as a matter of law. Furthermore, Gross failed to state a claim against the City or show that City officials were not entitled to qualified immunity. The Court grants Defendant's Motion for Summary Judgment on all the federal issues and remands Gross' remaining claims, arising under Ohio law, to the Summit County Court of Common Pleas.

      IT IS SO ORDERED.


Date: <u>July 15, 2005</u>            <u>/s/ Christopher A. Boyko</u>
                                       CHRISTOPHER A. BOYKO
                                       United States District Judge
                                       Original signature on file